**ALASKA STEAMSHIP COMPANY,**
**a corporation, Petitioner,**

**v.**

**FEDERAL MARITIME COMMISSION**
**and United States of America,**
**Respondents.**

**No. 20933.**

United States Court of Appeals
Ninth Circuit.

June 16, 1966.

---

Before CHAMBERS, POPE and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

Before us for decision is a petition by the above named petitioner for a review of certain orders of the Federal Maritime Commission. This court has jurisdiction to review such orders pursuant to the provisions of the Hobbs Act, Title 5 U.S.C. §§ 1037 and 1039, and the Administrative Procedure Act, Title 5 U.S. C. § 1009.

The petitioner serves all of the areas of the State of Alaska as a common carrier by water and from the Port of Seattle on the one hand and various ports and places in Alaska on the other. As such common carrier it is subject to the regulatory jurisdiction of the respondent Commission.

In late February and early March, 1966, petitioner filed tariff schedules with the Commission naming increased rates and charges in connection with its service in the Southeastern and the Peninsula and Bering Sea areas of Alaska, some of them to be effective on April 1, 1966, and the remainder on April 8, 1966. Provisions for the filing of such proposed new rates or tariff schedules are found in § 3 of the Intercoastal Shipping Act (1933) 46 U.S.C. § 845. The provisions of that section are set forth in the margin.[1] It will be noted that that

Edward G. Dobrin, Stanley B. Long, Robert W. Graham, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for petitioner.

James L. Pimper, Gen. Counsel, Robt. N. Katz, Sol., Walter H. Mayo, III, Atty., FMC, Washington, D. C., Donald F. Turner, Asst. Atty. Gen., Irwin A. Seibel, Atty., Dept. of Justice, Washington, D. C., for respondents.

1. "Whenever there shall be filed with the Federal Maritime Board any schedule stating a new individual or joint rate, fare, or charge, or any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate, fare, or charge, the Board shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, * * * but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, charge, classification, regulation, or practice: Provided, however, that there shall be no suspension of a tariff schedule or service which extends to additional ports, actual service at rates of said carrier for similar service already in effect at the nearest port of call to said additional port.

"Pending such hearing and the decision thereon the Federal Maritime Board, upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, or practice, but not for a longer period than four months beyond the time when it would otherwise go into effect; and after full hearing whether completed before or after the rate, fare, charge, classification, regulation, or practice goes into effect, the Board may make such order with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made within the

section refers to the filing of new rates or charges. It will be noted also that the Commission (successor to the Board mentioned in the Act) may suspend the operation of such schedules of rates for a stated period "beyond the time when it would otherwise go into effect." The language of this section was substantially copied from the provisions of § 15 (7) of the Interstate Commerce Act (49 U.S.C. § 15(7)).

Long prior to the enactment of the Intercoastal Shipping Act the Interstate Commerce Commission had ruled that under its corresponding section its power to suspend rates applied only to new rates, that is to say, those which had not become effective. The parties here before us are not in disagreement as to the petitioner's contention that a similar construction must be given to the language used in the section set forth in the foregoing footnote, and that therefore the Commission was without power to suspend any of the proposed new rates once they had actually gone into effect.

In the case before us the rates went into effect a portion of them on April 1, 1966, and the remainder on April 8, 1966. Therefore any suspension effected by the respondent Commission would have to be accomplished prior to those dates. The manner and mode of accomplishing such suspension are specified with considerable particularity in the applicable section. There must be a "statement in writing of its reasons for such suspension" which must be filed "with such schedule" and must be delivered "to the carrier or carriers affected thereby."

The record here shows that the purported suspension orders were entered in what were designated by the Commission as its docket No. 66–22 and docket No. 66–23. Docket 66–22 referred to the rates stated to become effective April 1, 1966, and docket 66–23 to the rates to become effective April 8, 1966. On March 31, 1966, the Commission voted to "suspend and investigate all increased rates scheduled to become effective April 1, 1966." On April 7, 1966, at another meeting, the Commission voted that the rates to become effective on April 8, 1966 be investigated and that with certain exceptions, noted in the motion, such rates be suspended.

On March 31, 1966, the Commission sent to the petitioner a telegram reading as follows: "The Commission today suspended to and including July 31, 1966, the following tariff matter" then specifying the rates to be suspended. On April 7, 1966, the Commission sent the petitioner another telegram stating: "The Commission today suspended to and including August 7, 1966" the other scheduled rate increases which were specified in the telegram. However, on neither date was there any statement in writing of reasons for such suspension and at no time prior to said dates was such a statement filed with the schedules and such statements were not prior to the effective dates of rate increases delivered or furnished to the carrier. Not until April 11, 1966, was any effort made to serve any statement relating to suspension of rates upon the petitioner. The files show that an order of the Commission entitled "Notice of Investigation and Suspension" in Docket No. 66–22 is marked "Served April 11, 1966" and although it purports to be dated March 31, 1966 and signed by the secretary of the Commission, it is admitted that no such service was made prior to that date. The notice of Investigation and Suspension in docket No. 66–23 bears the same endorsement showing service on April 11, 1966, although that also purports to bear date of April 7, 1966.

period of suspension, the proposed change of rate, fare, charge, classification, regulation, or practice shall go into effect at the end of such period. At any hearing under this paragraph the burden of proof to show that the rate, fare, charge, classification, regulation, or practice is just and reasonable shall be upon the carrier or carriers. The Board shall give preference to the hearing and decision of such questions and decide the same as speedily as possible."

The parties have stipulated that these notices of investigation and suspension on behalf of the Commission were signed by its secretary on April 11, 1966 and they were received by the petitioner on April 13, 1966. On April 11 and on April 13, 1966 the new rates had become effective pursuant to the filed notices thereof and the petitioner was then under statutory obligation to enforce and charge those rates. It is thus apparent that none of the acts required by the statute previously quoted were performed prior to the effective dates of such rates. Under this state of the record petitioner asserts that the time had expired when the Commission might have suspended the rates in question and that the order of suspension is therefore void.

The Commission does not challenge the assertion that its action to suspend the rates must precede the date when the rates would become effective but it asserts that its sending of the telegrams above referred to operated as a sufficient notice and the action taken at the meetings previously referred to constituted sufficient steps to satisfy the requirements of the statute. In support of this position the Commission relies on the case of Consolidated Truck Service, Inc. v. United States and Interstate Commerce Commission, 193 F.Supp. 773, and Phillips Petroleum Company v. Federal Power Commission, 10 Cir., 227 F.2d 470.

In the last named case a suspension order of the Federal Power Commission was involved and the Act there in question contained relevant language identical to that involved here. In that case a dispute existed between the parties as to whether the rates became effective June 7, 1954 or October 1, 1954. In that case a telegram had been sent by the Commission to the company on September 30, 1954. However the decision was in favor of the company because the court held that the rates sought to be suspended became effective June 7, as contended by the company. Therefore the decision was in the company's favor. The court did by way of dictum suggest that the telegram received by the company on the last day of notice satisfied the statutory requirement.

In that case the telegram had stated no reasons but it did say "two orders followed by mail." The dictum was to the effect that the order which followed the next day was merely an amendment or enlargement of the reasons for the suspension order referred to in the telegram and that it related back to the telegram and thus met the statutory requirements. At any rate the case cited is not authority for the position of the Commission here. In the Consolidated Truck Service, Inc. case, supra, the Interstate Commerce Commission order was delivered to the carrier ten hours after the rates became effective. However, there was in that case a statutory provision not present here to the effect that notices or orders there involved would be deemed served at the time the notices were mailed. Since the notice there involved was mailed within time that case is of no assistance here.

A sound solution of the question here before us requires us to conclude that when Congress provided that the several steps stated in the statute must be taken in order to accomplish a suspension, it intended that all those steps should be completed in order to accomplish a suspension and that the same must be completed before the rates in question become effective. We hold therefore that before the suspension order was signed and delivered to the petitioner the Commission's power to suspend the rates had terminated and that the order of suspension was and is void and must be set aside.

Accordingly, the portion of the said Commission's order purporting to suspend the aforesaid rates and tariffs is set aside and vacated.

Prior to the filing of the petition in this court the Commission procured from the District Court for the District of Alaska an injunction restraining the petitioner from putting into effect or collecting the rates specified in the said tariffs pending the hearing and disposition of the petition of the Commission

to enforce its orders. In view of our decision herein the said injunction issued by the United States District Court is vacated pursuant to the provisions of § 1039 of Title 5 U.S.C.